**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Karen Lisa GRAHAM, Appellee.**

Superior Court of Pennsylvania.

Submitted July 1, 2013.

Filed Nov. 26, 2013.

---

1. I question whether Appellant is entitled to any credit for time served.

---

William T. Fullerton, Assistant District Attorney, Butler, for Commonwealth, appellant.

Charles M. Nedz, Butler, for appellee.

BEFORE: LAZARUS, OLSON and COLVILLE,* JJ.

OPINION BY OLSON, J.:

The Commonwealth appeals from the trial court's December 5, 2012 order, wherein the trial court granted Karen Lisa Graham's post-sentence motion for a judgment of acquittal. Pursuant to our Supreme Court's opinion in *Commonwealth*

---

* Retired Senior Judge assigned to the Superior Court.

1. The crimes are codified, respectively, at 75 Pa.C.S.A. § 3802(a)(1) and (d)(3). In relevant part, these subsections provide:

(a) **General impairment.—**
(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

*v. Griffith,* 613 Pa. 171, 32 A.3d 1231 (2011), we are required to vacate the trial court's order and remand for the reinstatement of the judgment of sentence.

The Commonwealth charged Karen Lisa Graham (hereinafter "Ms. Graham") with a number of crimes, including driving under the influence of alcohol (general impairment) and driving under the combined influence of alcohol and a drug or combination of drugs.[1] On August 1, 2012, Ms. Graham proceeded to a jury trial, where Zelienople Borough Police Officer Michael Kopp and Ms. Graham testified.

As Officer Kopp testified, at the time of the incident, he was a 16–year veteran of the Zelienople Police Department, had received extensive training and education with respect to recognizing the signs and symptoms of individuals who are "driving under the influence," extensively observed individuals who were suspected of "driving under the influence," was trained in performing field sobriety tests "to determine . . . if [an individual is] under the influence of alcohol or drugs," and, during the course of his career, had performed field sobriety tests "over [100] times." N.T. Trial, 8/1/12, at 32–42.

Officer Kopp testified that, at approximately 2:00 a.m. on October 1, 2011, he was sitting in his marked police car and was monitoring traffic on West Beaver

. . .

(d) **Controlled substances.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

. . .

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802.

Street in Zelienople. *Id.* at 43. As Officer Kopp testified, at this time, he watched as a vehicle slowly drove its right front passenger-side tire off the West Beaver Street road surface and onto the depressed, gravel edge of the roadway. *Id.* at 47. Officer Kopp testified that the vehicle was traveling noticeably below West Beaver Street's posted 35 mile-per-hour speed limit, that the night was dry and clear, and that nothing in the roadway required any type of evasive action. *Id.* at 46–47.

Officer Kopp testified that the vehicle immediately reentered the roadway and then slowly drove into a nearby housing community. *Id.* at 48. The officer testified that, approximately 30 seconds later, he witnessed the vehicle exit the community and slowly continue, in the same direction, along West Beaver Street. *Id.* According to Officer Kopp, the vehicle then came to a complete stop—in the middle of the road—directly in front of the officer. *Id.* at 49. The vehicle remained stationary for approximately five to six seconds, after which time it continued along West Beaver Street. *Id.* at 50. It was at this point that Officer Kopp decided to follow the vehicle to determine if anything was wrong with the operator. *Id.* at 51.

After witnessing the vehicle fail to completely stop at various stop signs, Officer Kopp activated his emergency lights and effectuated a traffic stop of the vehicle. *Id.* at 52 and 90. According to Officer Kopp, when he approached the driver's side of the vehicle, he saw the female driver—who was later identified as Ms. Graham—speaking on her cellular telephone "almost like [the officer] wasn't even there." *Id.* at 53. The officer requested Ms. Graham's paperwork and watched as Ms. Graham "fumbled around" looking for her papers, while she continued to speak on her telephone. *Id.* at 54. During this time, Officer Kopp observed that Ms. Graham had slurred, slow speech and glassy, bloodshot eyes. *Id.* at 54–55. Moreover, Officer Kopp testified that he could smell "the odor of an intoxicating beverage" emanating from Ms. Graham. *Id.* at 56.

Eventually, Officer Kopp requested that Ms. Graham exit her vehicle. The officer testified that Ms. Graham had difficulty exiting the vehicle and that she needed assistance to stand. *Id.* at 55. Officer Kopp testified that he then administered various field sobriety tests, all of which Ms. Graham failed. *Id.* at 57.

Officer Kopp testified that he placed Ms. Graham "under arrest for suspicion of driving under the influence of alcohol" and drove Ms. Graham to Ellwood City Hospital for blood alcohol testing. *Id.* at 60. According to Officer Kopp, when they arrived at the hospital, he requested that Ms. Graham submit a sample of her blood for chemical testing. Officer Kopp testified that Ms. Graham refused to submit to the blood draw. *Id.* at 63. Moreover, Officer Kopp testified, Ms. Graham informed him that the reason she did not wish to submit to the blood test was because she had Celexa, Hydro Pam, and Vistaril "in her system." *Id.* Officer Kopp testified that Ms. Graham told him that she had a valid prescription for all three medications. *Id.* at 80–81.

Towards the end of Officer Kopp's testimony, Officer Kopp testified:

Q: [ ] Officer, based on your education and your experience and your training, do you have an opinion as to whether or not [Ms. Graham] was under the influence of alcohol and/or a combination of alcohol and/or drugs?

A: I do believe she was under the influence of alcohol.

*Id.* at 66.

Following Officer Kopp's testimony, the Commonwealth rested its case. *Id.* at 83–

84. The defense then called Ms. Graham to testify on her own behalf. Ms. Graham testified: that she did not drink alcohol on the night in question; that, at the time of the stop, she had a valid prescription for Celexa, Hydro Pam, and Vistaril; that the medications were prescribed to treat her depression and bipolar disorders; and, that "when [she] take[s her] medication, [she] take[s] them as prescribed." *Id.* at 92–96. Further, Ms. Graham testified that, on the night in question, her imbalance, lack of coordination, and speech impediments were caused by the fact that, 23 years ago, her ex-husband shot her in the face. According to Ms. Graham, the shooting left her with massive, full-body nerve damage. *Id.* at 93–94. Finally, Ms. Graham testified as to both the reason Officer Kopp requested that she submit to a blood test and the reason she refused the blood test. As Ms. Graham testified, Officer Kopp specifically informed her that he wished to test her blood "for alcohol ... [o]r any other drug" and that she refused to submit to the test "[b]ecause [she] was on [her] medication [and she] figured that was going to come up in the blood test." *Id.* at 94, 99–100, and 103–104.

The jury found that Ms. Graham was not guilty of violating 75 Pa.C.S.A. § 3802(a)(2) (driving under the influence of alcohol (general impairment)), but that she was guilty of violating 75 Pa.C.S.A. § 3802(d)(3) (driving under the combined influence of alcohol and a drug or combination of drugs). *Id.* at 158. On September 27, 2012, the trial court sentenced Ms.

Graham to a term of 60 months' intermediate punishment for this conviction.[2]

On October 4, 2012, Ms. Graham filed a timely post-sentence motion for a judgment of acquittal. According to Ms. Graham, the evidence was insufficient to support her Section 3802(d)(3) conviction, as there was no evidence that she was impaired by any drug. Therefore, Ms. Graham claimed, since there was no evidence that her impairment was caused by "the combined influence of alcohol **and** a drug or combination of drugs," the trial court was required to vacate her judgment of sentence. Ms. Graham's Motion for Judgment of Acquittal, 10/4/12, at 1 (emphasis in original).

Following oral argument, the trial court granted Ms. Graham's posttrial motion and vacated her judgment of sentence. According to the trial court, even though the Commonwealth presented evidence that Ms. Graham was impaired, "there was [no] evidence in the record to support the conclusion that the impairment was caused by the influence of alcohol and a drug or a combination of drugs." Trial Court Opinion, 12/5/12, at 2. The trial court explained that its conclusion was based upon the following: 1) "[Officer Kopp] did not testify that he had received any education, training[,] or experience in the detection of drivers who are impaired due to controlled substances;"[3] 2) "[Officer Kopp did not testify] that he suspected or was of the opinion that [Ms. Graham] was impaired by the ingestion of a controlled substance

**2.** The conviction constituted Ms. Graham's third driving under the influence conviction within the previous ten years and Ms. Graham's seventh, total, driving under the influence conviction. N.T. Trial, 8/1/12, at 163.

**3.** As will be explained below, the trial court erred in concluding that Officer Kopp "did not testify that he had received any education, training[,] or experience in the detection of

drivers who are impaired due to controlled substances." Trial Court Opinion, 12/5/12, at 3. Rather, when Officer Kopp's testimony is viewed under the requisite standard of review, it is apparent that the officer did testify as to his extensive education, training, and experience in detecting drivers who were impaired due to controlled substances.

in general, [or] Celexa, [HydroPam], or Vistaril in particular;" 3) "[t]he Commonwealth did not present any expert testimony regarding the effects on the human body that the ingestion of the above controlled substances would have or to explain to the jury that ingestion of these substances could explain [Ms. Graham's] symptoms of impairment and then opine that she was incapable of safely operating a motor vehicle because of that;" and, 4) "[t]here was no evidence presented regarding the combined influence of alcohol and a drug or a combination of drugs from either the officer or an expert witness." *Id.* at 3.

The Commonwealth filed a timely notice of appeal and now raises the following claim:

> Whether the trial court committed an error of law when it granted [Ms. Graham's] [p]ost-[s]entence [m]otion for [j]udgment of [a]cquittal by concluding that the record did not contain sufficient evidence of [Ms. Graham's] guilt of driving under the combined influence of alcohol and a drug or combination of drugs?

Commonwealth's Brief at 4.

 "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Hutchinson*, 947 A.2d 800, 805 (Pa.Super.2008). As we have stated:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559–560 (Pa.Super.2011) (en banc), quoting *Hutchinson*, 947 A.2d at 805–806. "It is well recognized, however, that a criminal conviction cannot be based upon mere speculation and conjecture." *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229, 1231 (1992).

As was explained above, in this case the jury found Ms. Graham not guilty of violating 75 Pa.C.S.A. § 3802(a)(2) (driving under the influence of alcohol (general impairment)), but guilty of violating 75 Pa. C.S.A. § 3802(d)(3) (driving under the combined influence of alcohol and a drug or combination of drugs). Section 3802(d)(3) defines the crime of driving under the combined influence of alcohol and a drug or combination of drugs in the following manner:

> **(d) Controlled substances.**—An individual may not drive, operate or be in

actual physical control of the movement of a vehicle under any of the following circumstances:

. . .

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(3).

The trial court granted Ms. Graham's timely post-sentence motion for a judgment of acquittal. It reasoned that the Commonwealth failed to satisfy its burden of production on the issue of whether Ms. Graham's impairment was caused by the "combined influence of alcohol and a drug." Trial Court Opinion, 12/5/12, at 2. We, however, conclude that our Supreme Court's recent opinion in *Griffith* requires that we vacate the trial court's order and reinstate Ms. Graham's judgment of sentence.

In *Griffith,* the defendant was arrested and charged with driving under the influence of a controlled substance, in violation of 75 Pa.C.S.A. § 3802(d)(2). The subsection reads:

(d) **Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

. . .

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

During the defendant's bench trial in *Griffith,* the Commonwealth presented evidence, which tended to establish that the defendant's "ability to safely drive, operate or be in actual physical control of the movement of [her] vehicle" was impaired on the night in question. The evidence of impairment included the testimony of an eyewitness, who testified that she observed the defendant drive across the yellow dividing line of a road three separate times and, each time, the oncoming vehicle was required to take evasive action to avoid a head-on collision. *Griffith,* 32 A.3d at 1233 n. 2. Further, on the issue of impairment, the Commonwealth presented the testimony of Police Officer William H. Dillman, who was the arresting officer in the case. As Officer Dillman testified, he had twelve years of experience as a police officer and had "received training as to driving under the influence cases, including with regard to persons under the influence of controlled substances." *Id.* at 1234 and 1240. Officer Dillman testified that the defendant: failed three field sobriety tests, had difficulty standing, and had "hands that were too shaky to light a cigarette." *Id.* at 1240; *Commonwealth v, Griffith,* 985 A.2d 230, 237 (Pa.Super.2009) (Lally–Green, J., dissenting), *reversed by Griffith,* 32 A.3d at 1240. As a result of his observations, Officer Dillman requested that the defendant submit to a blood test "for the detection of controlled substances in [the defendant's] blood." *Griffith,* 32 A.3d at 1240.

As to the cause of the defendant's impairment, the parties in *Griffith* stipulated that the defendant's blood test "revealed the presence of two Schedule IV drugs, Diazepam [ ] at 95 nanograms per milliliter, and Nordiazepam, at 220 nanograms per milliliter"—and that the substances "were, respectively, just below and in the therapeutic concentration range." *Griffith,* 32 A.3d at 1234. The defendant also admitted that she "had taken a different drug, a Soma 350, in the morning of the

day of the accident." *Id.* at 1240. Importantly, however, in *Griffith*, the parties introduced no expert testimony as to: the pharmacological properties of the drugs the defendant ingested; whether any of the drugs could have impaired the defendant's ability to safely drive; or, whether a combination of the drugs could have impaired the defendant's ability to safely drive. *Id.* at 1234.

The trial court found the defendant in *Griffith* guilty of driving under the influence of a controlled substance, in violation of 75 Pa.C.S.A. § 3802(d)(2), and the defendant appealed to this Court. On appeal, we concluded that the evidence was insufficient to sustain the defendant's conviction; we thus vacated the defendant's judgment of sentence. *Griffith*, 985 A.2d at 235, *reversed by Griffith*, 32 A.3d at 1240.

As we held, although there was sufficient evidence to establish that the defendant was incapable of safely operating her vehicle, there was no evidence to establish that the defendant's impairment was caused by "a drug or combination of drugs." *Griffith*, 985 A.2d at 235, *reversed by Griffith*, 32 A.3d at 1240. Indeed, we held that the Commonwealth's failure to introduce expert testimony—to explain the "effects [and] interactions" of the prescription medications at issue—was fatal to the Commonwealth's case. We declared:

> while the factfinder (either a lay jury or a trial judge presiding over a non-jury trial) may reach a cause and effect determination on circumstantial evidence that the defendant was rendered incapable of safe driving due to consumption of **alcohol,** it must be afforded expert testimony concerning the effects and interactions of **prescription medications** where such medications are the alleged intoxicants. Without such testimony, the effects or interactions of the medi-

cations at issue are rendered uncertain, inviting the factfinder to assume the effect of a controlled substance based merely on the fact that the defendant's conduct followed his ingestion of the controlled substance, or worse, the absence of any other explanation for his conduct. Although such inferences may be acceptable in the civil arena, subject to a lesser standard of proof and more limited constitutional protections, their insertion into a criminal prosecution imposes an unacceptable burden upon the defendant, who has no obligation to disprove the Commonwealth's case or posit any explanation for his conduct.

*Griffith*, 985 A.2d at 236, *reversed by Griffith*, 32 A.3d at 1240 (emphasis in original).

Our Supreme Court granted the Commonwealth's petition for allowance of appeal and reversed our order. First, the *Griffith* Court held that we erred in "reading into [75 Pa.C.S.A. §] 3802(d)(2) a mandatory requirement for expert testimony to establish that the defendant's inability to drive safely was caused by ingestion of a drug, even if it is a prescription drug, or drug combination." *Griffith*, 32 A.3d at 1238. As the Supreme Court explained, in drafting Section 3802(d)(2), our legislature eschewed language that would have necessitated expert testimony or required "a measurement to determine if any amount of a . . . controlled substance is detectable in the defendant's blood." *Id.* at 1239. Instead, our Supreme Court held, Section 3802(d)(2) broadly and generally prohibits an individual from operating a vehicle where "[t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." *Id.;* 75 Pa.C.S.A. § 3802(d)(2). Our Supreme Court held that this broad, general language—which is similar to that

used in the "general impairment of alcohol" provision of Section 3802(a)(1)—allows the Commonwealth to satisfy its burdens of production and proof with expert or lay evidence. *Griffith*, 32 A.3d at 1238–1240. In other words, our Supreme Court held, the focus of Section 3802(d)(2) is not upon the type of evidence introduced, but upon whether **the totality of the evidence** proved that the defendant's inability to drive safely "was the result of the influence of a drug or combination of drugs."[4] *Id.* at 1239.

The *Griffith* Court then applied the law to the facts of the case and expressly held that the evidence was sufficient to support the defendant's conviction for driving under the influence of a drug or combination of drugs. As the Supreme Court held:

> An experienced police officer closely observed [the defendant's] behavior, demeanor, unsteadiness, and inability to perform field sobriety tests, all of which led him to request laboratory tests for the detection of controlled substances in [the defendant's] blood. [The defendant] admitted taking [the prescription drug Soma] in the morning of the day of her arrest. Two other Schedule IV controlled substances ... were detected in her blood. The Commonwealth's evidence was sufficient to establish, beyond a reasonable doubt, that Appellee violated subsection 3802(d)(2).

*Id.* at 1240.[5]

■ *Griffith* applies with full force to the case at bar. At the outset, even though *Griffith* applied 75 Pa.C.S.A. § 3802(d)(2) (driving under the influence of a drug or combination of drugs) and this case requires that we apply 75 Pa.C.S.A. § 3802(d)(3) (driving under the combined influence of alcohol and a drug or combination of drugs), both subsections use the same, "general language" of impairment that is contained in 75 Pa.C.S.A. § 3802(a)(1) (general impairment of alcohol). Indeed, like Section 3802(d)(2)-which prohibits an individual from driving a vehicle where the individual is "under the influence of a drug or combination of drugs **to a degree which impairs the individual's ability to safely drive ... the vehicle**"—Section 3802(d)(3) prohibits an individual from driving a vehicle where the individual is "under the combined influence of alcohol and a drug or combination of drugs **to a degree which impairs the**

---

**4.** The Supreme Court in *Griffith* noted that "[t]he need for expert testimony in a subsection 3802(d)(2) prosecution must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence." *Griffith*, 32 A.3d at 1239.

**5.** In *Griffith*, the Supreme Court noted that two of the drugs were classified as "Schedule IV" controlled substances. However, this fact was **irrelevant** on the issue of whether the drugs had any impairing effects. Certainly, 35 P.S. § 780–104(4) defines a "Schedule IV" controlled substance in the following manner:

> In determining that a substance comes within [Schedule IV], the [S]ecretary [of Health of the Commonwealth of Pennsylvania] shall find: a low potential for abuse relative to substances in Schedule III; currently accepted medical use in the United States; and limited physical and/or psychological dependence liability relative to the substances listed in Schedule III.

35 P.S. § 780–104(4). Section 780–104(4) then goes on to list a number of specific controlled substances that are "included in this schedule." *Id.*

Thus, the fact that a substance is a "Schedule IV" controlled substance **does not mean that it may cause an impairing effect.** It means nothing more than that the secretary found: 1) **a low potential for abuse** relative to substances in Schedule III; 2) **currently accepted medical use** in the United States; and, 3) limited physical and/or psychological **dependence liability** relative to the substances listed in Schedule III. *Id.*

individual's ability to safely drive . . . the vehicle." 75 Pa.C.S.A. § 3802(d)(2) and (3) (emphasis added). Therefore, as the *Griffith* Court held with respect to Section 3802(d)(2), Section 3802(d)(3) likewise "does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case"—and the Commonwealth, in this case, was not required to introduce expert testimony to meet its burden. *Griffith,* 32 A.3d at 1239.

■ Moreover, after viewing the evidence in the light most favorable to the Commonwealth as the verdict winner (as we must), we conclude that the evidence is sufficient to support Ms. Graham's conviction for driving under the combined influence of alcohol and a drug or combination of drugs, in violation of Section 3802(d)(3).[6]

First, the arresting officer in this case—Officer Kopp—testified that, at the time of the incident, he: was a 16–year veteran of the Zelienople Police Department, had received extensive training and education with respect to recognizing the signs and symptoms of individuals who are "driving under the influence," extensively observed individuals who were suspected of "driving under the influence," was trained in performing field sobriety tests "to determine . . . if [an individual is] under the influence of alcohol or drugs," and, during the course of his career, had performed field sobriety tests "over [100] times." N.T. Trial, 8/1/12, at 32–42.

It is important to emphasize that, during Officer Kopp's testimony, Officer Kopp broadly testified that he was educated, trained, and experienced in detecting individuals who were "**driving under the in-**

fluence." *Id.* (emphasis added). Officer Kopp neither specified nor limited his testimony on this issue; thus, Officer Kopp never testified that he was **only** able to detect individuals who were "driving under the influence of alcohol." To the contrary, when Officer Kopp's testimony is viewed in the light most favorable to the Commonwealth, the testimony must be construed to mean that Officer Kopp was educated, trained, and experienced in detecting individuals who were "driving under the influence" of all manner of intoxicants and impairing agents. *Commonwealth v. Toritto,* 67 A.3d 29, 33 (Pa.Super.2013) (*en banc*) ("[w]hen reviewing a sufficiency [of the evidence] claim[, we are] required to view the evidence in the light most favorable to the verdict winner [and give the Commonwealth] the benefit of all reasonable inferences [that may be] drawn from the evidence") (internal quotations and citations omitted).

Second, Officer Kopp witnessed and testified to Ms. Graham's obvious signs of impairment on the night in question, including the fact that Ms. Graham: drove her vehicle in a slow, odd, and reckless manner; continued to speak on her telephone when the officer approached her vehicle; had slurred, slow speech and glassy, bloodshot eyes; required assistance to exit her vehicle; required assistance to stand; failed every one of the officer's field sobriety tests; and, emanated an odor of alcohol. N.T. Trial, 8/1/12, at 43–57.

After observing these obvious signs of impairment, Officer Kopp requested that Ms. Graham submit to a blood test. *Id.* at 60. Moreover, as Ms. Graham testified,

---

6. In the case at bar, the evidence was obviously sufficient to support the conclusion that, when Ms. Graham was driving her vehicle on the night in question, Ms. Graham was impaired and was incapable of safely driving her vehicle. The only issue in this case is wheth-

er the evidence was sufficient to support the conclusion that Ms. Graham's impairment was caused by "the combined influence of alcohol and a drug or combination of drugs." *See* 75 Pa.C.S.A. § 3802(d)(3).

Officer Kopp specifically informed her that he wished to test her blood "for alcohol ... [o]r any other drug" and that she refused to submit to the test "[b]ecause [she] was on [her] medication [and she] figured that was going to come up in the blood test."[7] *Id.* at 94, 99–100, and 103–104. The three prescription medications to which Ms. Graham admitted ingesting were Celexa, Hydro Pam, and Vistaril—and Ms. Graham admitted that all three drugs were "in her system" on the night in question. *Id.* at 63.

Pursuant to *Griffith,* this evidence is sufficient to establish that Ms. Graham's impairment was caused by the "combined influence of alcohol and a drug or combination of drugs." 75 Pa.C.S.A. § 3802(d)(3). We therefore conclude that the evidence is sufficient to support Ms. Graham's conviction for driving under the combined influence of alcohol and a drug or combination of drugs. Certainly, we need only paraphrase *Griffith's* concluding paragraph:

> An experienced police officer closely observed [Ms. Graham's] behavior, demeanor, unsteadiness, and inability to perform field sobriety tests, all of which

led him to request laboratory tests for the detection of [both alcohol and] controlled substances in [Ms. Graham's] blood. [Ms. Graham] admitted taking [Celexa, Hydro Pam, and Vistaril as prescribed and admitted that all three prescription drugs were "in her system" while she was driving]. The Commonwealth's evidence was sufficient to establish, beyond a reasonable doubt, that[, on October 1, 2011, Ms. Graham drove her vehicle while she was "under the combined influence of alcohol and a drug or combination of drugs to a degree which impair[ed her] ability to safely drive ... the vehicle," in violation of] subsection 3802(d)[ (3) ].

*Griffith,* 32 A.3d at 1239.[8, 9, 10]

Order vacated. Case remanded for the reinstatement of the judgment of sentence. Jurisdiction relinquished.

---

7. The trial court correctly noted that "[Officer Kopp did not testify] that he suspected or was of the opinion that [Ms. Graham] was impaired by the ingestion of a controlled substance in general, [or] Celexa, [HydroPam], or Vistaril in particular." Trial Court Opinion, 12/5/12, at 3. However, **Ms. Graham testified** that Officer Kopp informed her that he wished to test her blood for "both" alcohol and controlled substances. N.T. Trial, 8/1/12, at 99–100. Again, our standard of review requires that we view the evidence in the light most favorable to the Commonwealth. Ms. Graham's testimony thus establishes that Officer Kopp "request[ed] laboratory tests for the detection of [both alcohol and] controlled substances in [Ms. Graham's] blood." *Griffith,* 32 A.3d at 1239.

8. Again, while the *Griffith* Court noted that the prescription drugs at issue were "Schedule IV" controlled substances—and while

there is no such comparable evidence in the case at bar—the "Schedule IV" label in *Griffith* was irrelevant as to whether the drugs had **any** impairing effects. *See supra,* at 145 n. 5.

9. Indeed, the evidence in the case at bar is even stronger than in *Griffith* because, in this case, Ms. Graham refused to submit to a chemical test of her blood—and then informed Officer Kopp that she did not wish to submit to the test "[b]ecause [she] was on [her] medication [and she] figured that was going to come up in the blood test." N.T. Trial, 8/1/12, at 94, 99–100, and 103–104. It is well established that a jury may both consider and weigh the fact of a refusal in determining whether the defendant was driving under the influence. *See, e.g.,* Pa.S.S.J.I. (Criminal) § 17.6502C (2012) ("Relevance of Refusal to Submit to Testing"). Here, Ms. Graham refused to submit to the blood test

and justified her refusal upon her fear that her prescription medications were "going to come up in the blood test." N.T. Trial, 8/1/12, at 94, 99–100, and 103–104. Viewed in the light most favorable to the Commonwealth, such evidence could demonstrate that Ms. Graham was aware of the fact that her prescription medications—when combined with the alcohol she had ingested—impaired her to such a degree that she could not safely operate her vehicle. *See* 75 Pa.C.S.A. § 3802(d)(3).

10. In support of its decision, the trial court also relied upon our opinion in *Commonwealth v. Hutchins*, 42 A.3d 302 (Pa.Super.2012). *Hutchins* is, however, inapposite to the case at bar. In *Hutchins*, the defendant was charged with driving under the influence of marijuana, in violation of 75 Pa. C.S.A. § 3802(d)(2). At trial, the Commonwealth attempted to prove causation by introducing the results of a blood test, which revealed that the defendant had "carboxy acid metabolite" in his system. *Id.* at 308. The

metabolite was, however, simply a waste product of tetrahydrocannabinol ("THC") and did not, by itself, demonstrate that the defendant was under the active influence of THC when he was driving. Therefore, in *Hutchins*, we stated that "absent expert explanation, [the defendant's] blood test result tells us only that [the defendant] ingested marijuana in the past; the test result, without expert explanation, fails to establish that [the defendant] was under the influence of marijuana at the time [he was driving]." *Id.*

In the case at bar, however, **Ms. Graham admitted** that she was under the active influence of Celexa, HydroPam, and Vistaril; further, Ms. Graham refused to submit to a blood test—which, when viewed in the light most favorable to the Commonwealth, demonstrates that Ms. Graham was conscious of the fact that she was under the active influence of both the drugs and alcohol. Thus, in this case, expert testimony was unnecessary to prove that Ms. Graham was under the combined influence of alcohol and a drug or combination of drugs.