J-S41026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER COURTNEY MCCALLA | : | |
| | : | |
| Appellant | : | No. 1469 WDA 2022 |

Appeal from the Judgment of Sentence Entered July 6, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001038-2021

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: December 26, 2023**

Appellant, Christopher Courtney McCalla, appeals from the judgment of

sentence entered on July 6, 2022, as made final by the denial of Appellant's

post-sentence motion on November 17, 2022.  We affirm.

The trial court ably summarized the underlying facts of this case:

> [On] February 16, 2021 at approximately 12:21 [p.m.,]
> Trooper Timothy Reilly (herein "Trooper Reilly") was on patrol
> on State Route 28 in the area of the Natrona Heights exit.
> Trooper Reilly observed a vehicle in front of him swaying in
> its lane of travel, traveling below the speed limit to an unsafe
> degree, and after running the vehicle's license plate
> discovered that the vehicle's registration was expired.
> Trooper Reilly proceeded to conduct a traffic stop.
>
> Trooper Reilly testified that upon approaching the vehicle and
> making contact with the driver he immediately smelled a
> strong odor of burnt marijuana emanating from inside of the
> vehicle.   [Appellant] could not produce a license but was

_____

[*] Former Justice specially assigned to the Superior Court.

identified as Christopher McCalla from his social security card and passport. [Appellant] was able to produce a registration card for the vehicle which indicated that the registration was expired. [Appellant] stated to the Trooper that he did not have insurance for the vehicle.

During this interaction, Trooper Reilly observed that [Appellant] had glassy, watery, bloodshot and "very droopy" eyelids. Trooper Reilly observed that [Appellant's] pupils seemed to be pinpoint. Further, Trooper Reilly observed [Appellant's] speech was drawn out and slow, his mannerisms were very slow and that he was having a hard time answering questions. Trooper Riley testified that while speaking to [Appellant], he appeared to be very tired.

Trooper Reilly believed [Appellant] was showing signs of impairment and requested [Appellant] perform standardized field sobriety tests based on those observations. During the walk-and-turn test, [Appellant] failed to stay in the start position, took eight steps instead of nine, and then did an improper turn. [Appellant] took nine steps backward but missed heel-to-toe steps on steps three and seven. The next test conducted was the one-legged stand. [Appellant] swayed throughout and put his foot down three times in 26 seconds. Trooper Reilly discontinued the test at 26 seconds because [Appellant] never raised his foot back up. Trooper Rielly testified both test results indicated [Appellant] was impaired at the time.

Trooper Rielly performed two Advanced Roadside Impaired Driving Enforcement (herein "ARIDE") tests which are primarily focused to detect impairment from a controlled substance. The tests conducted were "lack of convergence" and the modified Romberg test to which [Appellant's] performance indicated signs of impairment. Trooper Reilly continued the ARIDE evaluation and asked [Appellant] to open his mouth. He observed [Appellant's] tongue was tinted green and that his taste buds were raised, which he testified was an indicator of recent marijuana use according to his training.

[Appellant] was taken into custody and agreed to submit to drug recognition expert (herein "DRE") evaluation. [Appellant] refused to undergo a blood test and signed the

DL26 form. The Commonwealth admitted into evidence, Exhibit One the DL26 form and Exhibit Two the Trooper's body cam footage depicting the field sobriety tests.

Trial Court Opinion, 2/15/23, at 1-3 (citations omitted).

Following a bench trial, Appellant was found guilty of driving under the influence of a controlled substance ("DUI")[1] and, on July 6, 2022, the trial court sentenced Appellant to serve six months of probation for his conviction. *See* N.T. Sentencing, 7/6/22, at 6-9. Appellant's timely post-sentence motion was denied by operation of law on November 17, 2022 and Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

> Whether the Commonwealth's evidence was insufficient to convict [Appellant] of DUI under Section 3802(d)(2) where the testimony consisted only of boilerplate accusations of impairment, and it failed to prove that [Appellant] drove in an unsafe manner?

Appellant's Brief at 8.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak

---

[1] 75 Pa.C.S.A. § 3802(d)(2).

and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

Appellant was convicted of DUI under 75 Pa.C.S.A. § 3802(d)(2).  This section declares:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

. . .

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).  "[T]o convict a defendant under [Section 3802(d)(2)], the Commonwealth must establish three elements:  1) that the defendant drove; 2) while under the influence of a controlled substance; and 3) to a degree that impairs the defendant's ability to drive safely." *Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023).

In general, Section 3802(d)(2) does not require "expert testimony to establish that the defendant's inability to drive safely was caused by ingestion of a drug, even if it is a prescription drug, or drug combination."

- 4 -

*Commonwealth v. Griffith*, 32 A.3d 1231, 1238 (Pa. 2011). The section also "does not require that a drug be measured in the defendant's blood" and it does not "specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug." *Id.* at 1239. "Instead, impairment evidence should be drawn from the totality of the factual circumstances." *Spence*, 290 A.3d at 309.

The trial court explained why the evidence supported Appellant's Section 3802(d)(2) conviction:

> Trooper Reilly observed [Appellant's] vehicle swaying within its lane of traffic and traveling at an unsafely slow speed on a major state highway. Upon making contact with [Appellant's] vehicle[, Trooper Reilly] observed the smell of burnt marijuana and noticed [Appellant's] physical symptoms, which in his training and experience, indicated [Appellant] was under the influence. Finally, [Appellant's] poor performance on field sobriety tests and ARIDE tests [led the Trooper] to believe [Appellant] could not safely operate his vehicle on the roadway due to impairment.

Trial Court Opinion, 2/15/23, at 3-4.

On appeal, Appellant takes issue with the trial court's statement, in its February 2023 opinion, that "Trooper Reilly observed [Appellant's] vehicle swaying within its lane of traffic." *See id.*; Appellant's Brief at 19. According to Appellant, this factual finding contradicts the trial court's earlier statement from the bench, where it declared:

> I've reviewed the testimony and evidence in this case including the dash cam that we all watched. . . . The video was a dash cam. And I will say that I did not observe that [Appellant] was weaving and swaying. So that's not a factor in my decision, the factors that I have considered. However,

- 5 -

from the video -- in fact from the video his driving was appropriate. He stayed within the lanes for the short period of time that we got to observe on the video. And he used his turn signals at the appropriate times.

N.T. Trial, 6/7/22, at 2-3.

At the outset, the factual findings the trial court made in its February 2023 opinion and during its June 2022 statement from the bench do not necessarily conflict. During Trooper Reilly's testimony, Trooper Reilly explained that, when he first noticed Appellant, Appellant was "weaving in [his] lane of travel" but that Appellant "actually stopped weaving in [his] lane of travel . . . when [he] got closer to [Route] 28." N.T. Trial, 6/6/22, at 10-11. Specifically, Trooper Reilly testified:

[Trooper Reilly]: While traveling west on Burtner Road, I observed [Appellant's vehicle] in front of my patrol vehicle. I observed that the vehicle was weaving in its lane of travel. It then turned onto the onramp. It turned left from Burtner Road onto the onramp to get onto PA-28.

. . .

So the vehicle, while it was traveling west on Burtner Road, was weaving in its lane of travel. And then when it was on the onramp it was weaving. At that time, I ran the registration through my mobile data terminal, through the CAD system, which was showing that the registration was expired 11 of '20. We proceeded onto PA 28 Southbound. The vehicle was traveling between 50 and 55 miles per hour, which is a posted 65 miles per hour zone, which is very dangerous for that roadway.

. . .

[The Commonwealth]: Are you able to tell me how many times you saw the vehicle weaving?

- 6 -

[Trooper Reilly]: Approximately, three or four times. When I got behind it on the onramp when it got closer to 28, it actually stopped weaving in its lane of travel and proceeded onto 28.

*Id.*

Given this testimony, it is not inconsistent for the trial court to declare that, "for the short period of time that we got to observe on the [dash cam] video," it observed Appellant driving appropriately and, at the same time, crediting Trooper Reilly's testimony that, when the Trooper first noticed Appellant, Appellant was "weaving in [his] lane of travel" and Appellant "actually stopped weaving in [his] lane of travel . . . when [he] got closer to [Route] 28." *See id.* From this testimony, it appears as though Trooper Reilly saw Appellant weaving prior to recording Appellant's vehicle on his dash camera.

Further, and regardless, the evidence was clearly sufficient to support Appellant's DUI conviction. First, Trooper Reilly testified that, when he approached Appellant's vehicle, he observed Appellant in the driver's seat of the vehicle and smelled "a strong odor of burnt marijuana coming from within the vehicle." N.T. Trial, 6/6/22, at 11-12. Second, Trooper Reilly testified that he observed outward signs that Appellant was impaired by marijuana. Specifically, Trooper Reilly testified:

[Appellant's] eyes were glassy, watery, and bloodshot. His eyelids were very droopy. His pupils seemed to be pinpoint. His speech was [drawn] out and slow. His mannerisms were very slow and he was having a hard time answering questions. While speaking to him, he appeared very tired.

*Id.* at 12.

Finally, Trooper Reilly testified that Appellant further demonstrated the depth of his impairment when Appellant failed to successfully perform the multiple field sobriety tests that Trooper Reilly administered.[2] *See id.* at 14-20.

Viewed in the light most favorable to the Commonwealth, this evidence is sufficient to establish that Appellant drove his vehicle "under the influence of a drug or combination of drugs to a degree which impair[ed Appellant's] ability to safely drive, operate or be in actual physical control of the movement of the vehicle." *See* 75 Pa.C.S.A. § 3802(d)(2); *see also Griffith*, 32 A.3d at 1240 (holding the evidence was sufficient to support the defendant's Section 3802(d)(2) conviction where the evidence demonstrated that the defendant: was having a hard time standing; was having a difficult time lighting a cigarette because her hands were shaking; was unable to perform three field sobriety tests; and, had later blood tests that revealed the presence of valium and nordiazepam); *c.f. Commonwealth v. Graham*, 81 A.3d 137

---

[2] We further note that Appellant refused Trooper Reilly's request to submit to a blood test. N.T. Trial, 6/6/22, at 20. This evidence "may be considered along with other factors" as supporting a conviction under Section 3802(d)(2). *See* 75 Pa.C.S.A. § 1547(e) ("In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 . . . , the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge").

(Pa. Super. 2013) (holding:  the evidence was sufficient to support the defendant's conviction for driving under the combined influence of alcohol and a drug or combination of drugs, in violation of Section 3802(d)(3), where the evidence established that the defendant:  "drove her vehicle in a slow, odd, and reckless manner; continued to speak on her telephone when the officer approached her vehicle; had slurred, slow speech and glassy, bloodshot eyes; required assistance to exit her vehicle; required assistance to stand; failed every one of the officer's field sobriety tests; . . . emanated an odor of alcohol" and admitted that she had recently ingested three prescription drugs); ***Commonwealth v. Feathers***, 660 A.2d 90 (Pa. Super. 1995) (holding:  the evidence was sufficient to sustain the defendant's conviction for driving under the influence of alcohol, under the general impairment statute, where the evidence demonstrated that the defendant had glassy, bloodshot eyes, slurred speech, a strong odor of alcohol on her breath, was unable to stand without support, and failed field sobriety tests); ***Commonwealth v. Kowalek***, 647 A.2d 948 (Pa. Super. 1994) (the Commonwealth's evidence established a *prima facie* case that the defendant was operating a motor vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving where the officer testified that the defendant "had a strong odor of alcohol about him and bloodshot eyes . . . [,] had difficulty producing his driver's license and registration, had slurred speech and was unable to stand on one foot for more than three seconds").

Appellant's sufficiency claim thus fails.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/26/2023