J-S42021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS MARCO RHEDRICK | : | |
| | : | |
| Appellant | : | No. 3151 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 30, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006450-2018

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    Filed: November 19, 2020

Appellant, Douglas Marco Rhedrick, appeals from the judgment of

sentence entered on July 30, 2019, following his bench trial convictions for

driving under the combined influence of alcohol and drugs - incapable of safe

driving (DUI – combined influence) and driving under the influence of alcohol

or controlled substance - general impairment (DUI – general impairment).[1]

We affirm.

The trial court summarized the facts of this case as follows:

While on patrol on August 7, 2018 at approximately 12:27 a.m.,
Sergeant [James] Robb [of the Upper Moreland Police
Department] observed a white Mazda driving on York Road
swerving repeatedly across the left and right southbound travel
lanes and occupying both travel lanes straddling the center line.
While traveling in the right travel lane, the vehicle swerved into
the left lane and nearly struck a dark colored SUV in the left travel
lane.  After making a corrective move, the Mazda once again

---

[1]  75 Pa.C.S.A. §§ 3802(d)(3) and (a)(1), respectively.

drifted back into the left lane again causing the operator of the same SUV to take evasive measures and swerve out of its own lane and across the solid yellow line into oncoming northbound traffic to avoid a collision with the Mazda. The white Mazda then made a hard erratic right turn to get back into the right lane of traffic and nearly hit the curb in doing so.

As a result of these observations, Sergeant Robb initiated a traffic stop. The driver of the white Mazda was identified as [Appellant]. Based on Sergeant Robb's training and experience, he believed that Appellant was driving under the influence [of alcohol and/or controlled substances] in violation of Section 3802 of the Vehicle Code.

At the time of this incident, Appellant, his niece, and his grandson were visiting the Philadelphia area to meet with detectives to investigate an alleged robbery at his place of business in Philadelphia. The three were staying in Peddler's Village in Bucks County, Pennsylvania. When the incident occurred, Appellant was driving to a grocery store to pick up some items for his grandson, a one and a half year old toddler. Appellant's Mazda had a manual transmission, and he claimed that he was not familiar with operating a stick shift vehicle.

When Sergeant Robb initiated the traffic stop, he observed that Appellant's eyes were bloodshot and glassy, his speech was slurred, his physical mannerisms were slow and lethargic, and he had difficulty obtaining his license from his wallet. Sergeant Robb believed these to be physical indicators consistent with driving under the influence [of alcohol and/or controlled substances], and he directed Appellant to exit his vehicle. In response to the Sergeant's questions, Appellant [stated] that he had not consumed any, but that he had taken the medication Gabapentin, which was prescribed to him after having cervical surgery in May 2017. He told Sergeant Robb that he had taken the medication three times that day. Sergeant Robb was familiar with the drug Gabapentin, and he knew that it [was] a central nervous system depressant. [Sergeant Robb was familiar with the side effects of Gabapentin, which he knew from his training and experience mimicked the effects of alcohol].

Based on his belief that Appellant was driving under the influence [of alcohol and/or controlled substances], Sergeant Robb directed that Appellant perform field sobriety testing. [At this time, Sergeant Robb] detected an odor of alcohol emanating from

[Appellant's] person. Before administering the tests, Sergeant Robb asked Appellant if he had any physical or other ailments that would prevent him from performing the tests. Appellant told [Sergeant Robb] that he had a cervical injury, but it did not prevent him from walking normally or standing on one leg and demonstrated that he was able to stand on one leg.

Sergeant Robb administered three field sobriety tests to Appellant: the horizontal gaze nystagmus test ("HGN"), the walk and turn, and the one leg stand. Appellant displayed impairment during each test. During the HGN test, Appellant was directed to follow the Sergeant's finger, but about halfway through the test he stared straight ahead rather than continuing to follow the finger. During the walk and turn test, Appellant was given specific instructions to walk straight ahead as if there was a line coming out of his left foot, and place his right foot in front of the left, heel to toe, and to stand with his arms out at his side, specifying to Appellant the number of steps he was to take. Appellant indicated that he understood the test. Upon performing the test, Appellant could not keep his balance, he started the test sooner than he was directed, he raised his arms higher than directed, he did not walk heel to toe as directed, he stepped off the line numerous times, and did not turn as directed. Next, Sergeant Robb administered the one leg stand test to Appellant. He explained the directions of the test to Appellant, but [Appellant] stated that he was unable to perform the test, and urinated on himself.

Based on Sergeant Robb's observations of Appellant related to his driving and his performance on the field sobriety tests, he took Appellant into custody at 12:42 a[.]m[.] for being unfit to safely operate a motor vehicle upon a highway as a result of impairment from drugs and/or alcohol. Appellant consented to a blood test. The parties stipulated to the [] lab analysis for Appellant's blood, which revealed a blood alcohol [content (BAC)] of 0.079 [%] and the presence of Gabapentin.

At the bench trial, Appellant testified that he had difficulty walking due to nerve damage which causes him pain. He stated that when the encounter occurred he was taking [] Gabapentin, as prescribed, to help with his nerve pain. Appellant testified that he has difficulty standing for long periods of time, he has difficulty bending and sitting, and he has problems with balance.

Trial Court Opinion, 12/11/2019, at 4-8 (record citations omitted).

The case proceeded as follows:

On May 14, 2019, following a bench trial, [the trial] court found Appellant guilty of [the aforementioned charges]. On July 30, 2019, [the trial] court sentenced Appellant[. The mandatory minimum sentence was seventy-two (72) hours pursuant to 75 Pa.C.S.A. § 3804(c). The trial court sentenced Appellant to] a term of imprisonment of [one to six months,] plus the costs of prosecution and a mandatory fine of $1,000.00 [pursuant to 75 Pa.C.S.A. § 3804(c).] In addition, the [trial] court sentenced Appellant to undergo [] drug and alcohol evaluation[s] and to complete Alcohol Highway Safety School.

[…]On August 6, 2019, Appellant filed a timely motion for post-sentence relief. Thereafter, Appellant retained private counsel and[,] on August 9, 2019, filed a second timely post[-]sentence motion[] challenging the sufficiency of the evidence, the weight of the evidence, and claiming that the [trial] court's sentence was excessive. On September 27, 2019, the [trial] court held a hearing on Appellant's post[-]sentence motions. On that date, the [trial] court granted [] Appellant's post-sentence motion[, finding] the [sentencing] guidelines that were placed on the record [failed to accurately reflect] Appellant's prior record score. The correct guidelines were placed on the record at the hearing on September 27, 2019.

The [trial] court gave Appellant the opportunity to be resentenced at a later date, but Appellant requested to proceed with sentencing. On September 27, 2019, the [trial] court vacated the [prior] sentence [] and resentenced Appellant on the charge of [DUI – combined influence] to a term of imprisonment of [] fifteen (15) days [to] six (6) months [and no further sentence on the remaining charge.] All other aspects of the sentence imposed remained unchanged. The [trial c]ourt released Appellant on bail pending appeal[, but] denied [relief] as to all other issues raised.

*Id.* at 1-2 (cleaned up; record citations omitted). This timely appeal resulted.[2]

---

[2]  Appellant filed a timely notice of appeal on Monday, October 28, 2019. *See* 1 Pa.C.S.A. § 1908 (whenever the last day of the appeal period falls on a weekend, such day shall be omitted from the computation of time). On

On appeal, Appellant presents the following issues for our review:

1. Whether there was insufficient evidence presented [] to prove [Appellant] guilty beyond a reasonable doubt on the charge of driving under the influence[- incapable of safely operating his motor vehicle], pursuant to 75 Pa.C.S.A. § 3802(a)(1)[?]

2. Whether there was insufficient evidence presented [] to prove [Appellant] guilty beyond a reasonable doubt on the charge of driving under the influence[- combined influence of alcohol and drugs which impaired his ability to safely operate his motor vehicle], pursuant to 75 Pa. C.S.A. § 3802(d)(3)[,] where [his] blood alcohol content was less than the legal limit of 0.08% and the drug present in his system was a prescription drug[?]

3. Whether the trial court's finding[s] of guilt[ …were] against the [] weight of the evidence presented at trial[?]

4. Whether the trial court abused its discretion in imposing an unreasonable sentence of fifteen (15) days to (6) months as the sentence was excessive. The mandatory minimum for a first time offense of violating 75 Pa.C.S.A. § 3802(d)(3) is three (3) days incarceration and the sentencing guidelines[,] irrespective of the mandatory minimum[,] do[] not call for incarceration. [Appellant] challenges the discretionary aspects of the trial court's sentence.

Appellant's Brief at 7-8 (unnecessary capitalization omitted).

Appellant's first two issues[3] challenge the sufficiency of the evidence

presented by the Commonwealth to support his two DUI convictions.

_____

October 31, 2019, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On that same date, Appellant filed his Rule 1925(b) concise statement. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 11, 2019.

[3] While Appellant purports to present two separate sufficiency challenges, he forwards only a single claim alleging that the evidence failed to show that he was incapable of safely operating his vehicle on the date in question. Hence, we will address the sufficiency of evidence as it relates to both DUI convictions in a single discussion.

Appellant generally claims "[t]here was insufficient evidence presented that [he] was incapable of safely driving an automobile on the date of the arrest." *Id.* at 18. Regarding his conviction for DUI – general impairment, Appellant posits:

> Appellant's blood alcohol level or content was below the legal limit [and t]here must be some correlation between the amount of the alcohol and the operation of the vehicle. Sargent Robb indicated the vehicle was swerving and it was occupying both travel lanes straddling the center lane. He further observed the white Mazda drift to the left and nearly collide with a gray SUV in the left lane. The "walk and turn test" was not performed satisfactorily according to the Sargent. [Appellant] was unable to balance, started too soon, raised his arms more than six (6) inches from his side, missed the heel to toe on every step of the advance[] and the return, stepped off the line three times on both the advance[] and the return. [Appellant advised the Sergeant he had a cervical disc injury.]
>
> Based upon this scan[t] testimony, the trial court found the Commonwealth's evidence sufficient, beyond a reasonable doubt in order find [Appellant] guilty of violating 75 Pa. C.S.A. § 3802(a)(1). On this record, the evidence was insufficient to convict [Appellant] of being incapable of safely driving a vehicle based upon the amount of alcohol in his system.

Appellant's Brief at 18-19 (record citations omitted; footnote incorporated).

Similarly, regarding his conviction for DUI – combined influence, Appellant claims:

> Sargent Robb testified that based upon his observations and based upon his training, [Appellant] was "under the influence of alcohol and drugs." [Appellant] indicated he was taking Gabapentin which he took about three times that day. Again, the evidence was insufficient to find [Appellant] was incapable of safely driving a motor vehicle because of the chemicals in his system, specifically, a prescription drug. There was no correlation between the ingestion of Gabapentin and the presence of alcohol [which] rendered [Appellant under the influence alcohol or drugs] or impaired [Appellant's] ability to safely drive.

- 6 -

***Id.*** at 20.

Our standard of review regarding a challenge to the sufficiency of the

evidence is well-settled:

> The standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Edwards***, 229 A.3d 298, 305–306 (Pa. Super. 2020)

(brackets and citation omitted).

Section 3802 of the Crimes Code provides, in pertinent part:

> (a) General impairment.--
>
> > (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> *　　　*　　　*
>
> (d) Controlled substances.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\*　　　　\*　　　　\*

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1) and (d)(3).

Regarding DUI – general impairment, this Court has previously explained:

[T]he Commonwealth [must] prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol. With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Section 3802(a)(1), the Pennsylvania Supreme Court [has stated]:

Section 3802(a)(1) […] is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two[-]hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection

> 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol - not on a particular blood alcohol level.

*Commonwealth v. Teems*, 74 A.3d 142, 145 (Pa. Super. 2013) (internal citations omitted).

Similarly, in examining the sufficiency of evidence under 75 Pa.C.S.A. § 3802(d)(3), this Court has recognized "75 Pa.C.S.A. § 3802(d)(3) (driving under the combined influence of alcohol and a drug or combination of drugs) [] use[s] the same, "general language" of impairment that is contained in 75 Pa.C.S.A. § 3802(a)(1) (general impairment of alcohol)." *Commonwealth v. Graham*, 81 A.3d 137, 145–146 (Pa. Super. 2013) (citation omitted). "Section 3802(d)(3) likewise does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case [that a defendant was driving under the combined influence of alcohol and a drug]." *Id.* at 146.

Here, the trial court determined there was sufficient evidence to support both DUI convictions:

> In this case, the evidence that Appellant drove while he was incapable of driving safely due to the ingestion of alcohol was sufficient to establish, beyond a reasonable doubt, his violation of subsection 3802(a)(1). Sergeant Robb observed Appellant driving erratically and swerving between lanes of traffic. At one point, Appellant swerved into the left lane nearly striking an SUV, and after making a corrective move, drifted back into the left lane again causing the operator of the same SUV to take evasive measures and swerve out of its own lane and across the solid yellow line into oncoming northbound traffic to avoid a collision with Appellant. A portion of the dash cam video from Sergeant Robb's patrol car was shown at the bench trial and entered into

evidence. The video depicted Appellant's vehicle crossing over the solid yellow line dividing the northbound and southbound lanes of York Road.

During his encounter with Sergeant Robb, Appellant had bloodshot and glassy eyes, slurred speech and lethargic movements. Appellant showed impairment during three separate field sobriety tests. The tests are designed to indicate whether a defendant is able to follow instructions while performing physical tasks, which is required in order to safely operate a motor vehicle. Appellant had alcohol in his system at the time he was operating his motor vehicle, as evidenced by his blood alcohol content measured at .079[%]. Appellant did not indicate to Sergeant Robb on the scene that he was unable to perform field sobriety tests due to his cervical injuries. Rather, he told the Sergeant that his injuries did not prevent him from walking normally and he demonstrated to the Sergeant that he was able to stand on one leg. Appellant made no indication to Sergeant Robb that his erratic driving was due to him being unfamiliar with driving a stick shift or poor gear shifting. The totality of this evidence was sufficient to establish that Appellant was incapable of safely operating his vehicle due to his consumption of alcohol, in violation of 75 Pa.C.S.A. § 3802(a)(1).

\* \* \*

In establishing that Appellant's inability to drive safely was the caused by his consumption of alcohol and the prescription drug, Gabapentin, the Commonwealth presented the testimony of the arresting officer, Sergeant Robb. Sergeant Robb testified about his observations of Appellant's driving, his demeanor when he initiated a traffic stop, and his performance on three field sobriety tests. Sergeant Robb testified that he had received training related to driving under the influence cases, including with regard to persons under the influence of controlled substances. Sergeant Robb was familiar with the signs and symptoms of both alcohol use and drug use. He was familiar with Gabapentin and its effects through his training.

Sergeant Robb is an experienced police officer and he closely observed Appellant's erratic driving that nearly caused a collision. In addition, he closely observed Appellant's behavior, demeanor, unsteadiness, and inability to perform three field sobriety tests, as detailed [above]. Appellant admitted to taking Gabapentin at the time of the incident. This was confirmed by the blood tests,

- 10 -

which revealed the presence of Gabapentin in addition to a blood alcohol content of .079[%]. The totality of the evidence was sufficient to establish that [Appellant's] impairment was caused by the combined influence of alcohol and a drug or combination of drugs to a degree which impaired his ability to safely drive his vehicle in violation of 75 Pa.C.S.A. § 3802(d)(3).

Trial Court Opinion, 12/11/2019, at 11-15 (footnote omitted).

Viewing the evidence in the light most favorable to the Commonwealth, as our standard of review requires, we agree with the trial court's assessment. The Commonwealth presented evidence regarding Appellant's actions and behavior, including the manner of his erratic driving and his inability to pass three field sobriety tests. The Commonwealth also presented evidence of Appellant's demeanor and appearance. Appellant showed physical signs of intoxication including, *inter alia*, bloodshot eyes, an odor of alcohol, lethargy, and slurred speech. Appellant admitted he had consumed alcohol and ingested prescription drugs. Moreover, at trial, the Commonwealth presented evidence that confirmed the presence of alcohol and Gabapentin in Appellant's bloodstream. Evaluating the totality of the evidence presented, we agree with the trial court that there was sufficient to prove Appellant's inability to drive safely due to the consumption of alcohol and drugs. As such, Appellant's first two issues are without merit.

Next, Appellant argues that his convictions were against the weight of the evidence presented. Appellant's Brief at 21-23. Similarly to his first two sufficiency claims, Appellant asserts his DUI – general impairment conviction was "against the weight of the evidence because [his] BAC level was below the legal limit and because the totality of the evidence indicates that the

accident occurred as a result of a pre-existing medical condition, not alcohol."

*Id.* at 21. Appellant maintains that "[t]here were plausible explanations offered as to why he was operating the vehicle in the manner he was on the evening of his arrest." *Id.* More specifically, Appellant claims:

> [Appellant] told the [trial c]ourt he was driving a vehicle that he only recently purchased, which was a manual transmission, [and] he was not familiar with it. The odor of alcohol [was] not obvious until [Appellant was] ordered out of the vehicle, despite the fact th[at] Sergeant had a conversation with him. It [was] 12:30 a.m., at the time of the stop. [Appellant was] in town for a stressful event involving his own armed robbery and there to testify as a witness. [Appellant] ha[d] a certain affect to his voice. [Appellant] informed the Sarge[a]nt of a cervical injury for which he takes Gabapentin. The fact he urinated upon himself was due the fact he takes water pills. There are other reasons why [Appellant] was not operating his vehicle to the best of his ability on the night in question. There was no expert testimony presented and there was reasonable doubt as to whether [Appellant] was incapable of safely operating a motor vehicle due to the combination of alcohol and Gabapentin, pursuant to 75 Pa.C.S.A. § 3802(d)(3). Likewise, there was reasonable doubt as to whether he was driving unsafely because of the alcohol in his system pursuant to 75 Pa.C.S.A. §3802(a)(1).

*Id.* at 23.

"In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Roberts*, 133 A.3d 759, 770 (Pa. Super. 2016) (internal citation and quotations omitted). Thereafter, our standard of review regarding a claim challenging the weight of the evidence is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict

is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

The finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Bright**, A.3d 744, 749 (Pa. Super. 2020) (internal citations and quotations omitted).

Regarding the weight of the evidence, the trial court concluded:

Although Appellant proffered testimony at the bench trial attempting to show that his driving behavior, demeanor during his encounter with Sergeant Robb, and unsatisfactory performance on the field sobriety tests were due to other factors unrelated to the alcohol and prescription drugs found in his blood, Sergeant Robb offered credible testimony to the contrary. Appellant's testimony was that he was driving a vehicle with which he was unfamiliar, he was stressed out due the pending criminal investigation of an armed robbery at this business, and had to drive a far distance in the middle of the night to obtain something for his young grandson. He claimed that his failure to satisfactorily perform field sobriety tests was due to his nerve damage and problems related to his cervical injury.

Sergeant Robb observed Appellant's erratic driving, and it was also depicted on the dash[board] cam[era] video. Appellant's swerving into the next lane of traffic and near collision with another vehicle was not indicative of being unfamiliar with driving a stick shift. Appellant did not tell Sergeant Robb on the scene that he was unable to drive a stick shift. Upon encountering Appellant, Sergeant Robb observed numerous indicators of being under the influence of alcohol and/or drugs, specifically slurred speech, lethargic movements, glassy and bloodshot eyes, and an odor of alcohol. During the field sobriety testing, Appellant displayed that he was incapable of following the instructions, he

urinated on himself, and he was unable to satisfactorily complete each field sobriety test administered to him. Appellant did not indicate to Sergeant Robb at the scene that he had physical limitations that prevented him from being able to perform the tasks required of him for the field sobriety testing. Rather, he told the Sergeant that he was able to walk normally and showed him how he could stand on one leg. His physical limitations did not explain why he was unable to move his eyes in line with the Sergeant's stylus or finger during the HGN test.

\* \* \*

The evidence established that the impairment displayed by [] Appellant was due to him being under the influence of alcohol and Gabapentin, and, as a result, he was incapable of safely operating his motor vehicle. Based on all of the evidence, and Sergeant Robb's credible testimony, the trial court exercised proper discretion in determining that the weight of the evidence was sufficient to prove that Appellant was incapable of safely operating a motor vehicle in violation of both 75 Pa.C.S.A. § 3802(a)(1) and 75 Pa.C.S.A. § 3802(d)(3).

Trial Court Opinion, 12/11/2019, at 17-19.

Based upon our deferential standard of review, we discern no abuse of trial court discretion in denying Appellant relief on his weight of the evidence claim. Here, the trial court had the opportunity to hear and see the evidence presented and it was free to credit Sergeant Robb's testimony over Appellant's version of events. Moreover, the trial court did not find the evidence to be so tenuous, vague, or uncertain that the verdict shocked its conscience. We may not reweigh that determination. Accordingly, Appellant's challenge to the weight of the evidence fails.

Finally, Appellant argues that his sentence of 15 days to six months of imprisonment is excessive. Appellant's Brief at 23-35. Appellant claims "[t]he sentence was well outside the [sentencing] guidelines and palpably

unreasonable." **_Id._** at 34. He argues that the trial court abused its discretion in imposing his sentence by failing to: (1) consider the factors set forth in 42 Pa.C.S.A. § 9721(b), including, the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and Appellant's rehabilitative needs; (2) state any reasons on the record for the sentence imposed; (3) obtain sufficient information to enable an informed decision; and/or (4) examine or apply the sentencing guidelines, aside from noting them on the record. **_Id._** at 27-35.

> This Court has previously determined:
>
> It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.
>
> Before this Court may reach the merits of a challenge to the discretionary aspects of a sentence, we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence **_see_** Pa.R.A.P. 2119(f); and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. If the appeal satisfies each of these four requirements we will then proceed to decide the substantive merits of the case.

**_Commonwealth v. Antidormi_**, 84 A.3d 736, 759 (Pa. Super. 2014) (internal citations, original brackets, and ellipsis omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **_Id._** "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the

- 15 -

Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation omitted). "[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Barnes***, 167 A.3d 110, 123 (Pa. Super. 2017) (*en banc*) (citation omitted).

Here, Appellant has complied with the requirements as set forth above. As previously mentioned, Appellant filed a timely post-sentence motion challenging his sentence as excessive, following his original sentencing. ***See*** Pa. R. Crim. P. 720 Comment ("Once a sentence has been modified or reimposed pursuant to a motion to modify sentence under paragraph (B)(1)(a)(v) or Rule 721, a party wishing to challenge the decision on the motion does not have to file an additional motion to modify sentence in order to preserve an issue for appeal, as long as the issue was properly preserved at the time sentence was modified or reimposed."). Moreover, Appellant's appeal is timely and he complied with Pa.R.A.P. 2119. Finally, we have previously determined that "[a]n averment that 'the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of [an a]ppellant, as 42 Pa.C.S.A. § 9721(b) requires, presents a substantial question for our review in typical cases." ***Commonwealth v. Derry***, 150 A.3d 987, 992 (Pa. Super. 2016) (original brackets omitted), *citing*

***Commonwealth v. Riggs***, 63 A.3d 780, 786 (Pa. Super. 2012). As such, we will proceed to review the merits of Appellant's sentencing claim.

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill-will, or arrived at a manifestly unreasonable decision.

***Derry***, 150 A.3d at 991.

In relevant part, 42 Pa.C.S.A. § 9721 provides that

the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with [] the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing[.] In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences a person following revocation of probation or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing[,] the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines[.] Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S.A. § 9721(b).

Furthermore:

We note that a sentencing court must state on the record its reasons for imposing sentence. Nevertheless, a lengthy discourse on the trial court's sentencing philosophy is not required. Rather, the record as a whole must reflect the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender.

*Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006)

(citations and quotations omitted).

Moreover,

[t]he sentencing court must consider the sentencing guidelines, and the consideration must be more than mere fluff. While the guidelines are advisory and nonbinding, a sentencing court must ascertain the correct guideline ranges [and] must demonstrate an awareness of the guideline sentencing ranges so that the appellate court can analyze whether the reasons for a departure from the guideline ranges are adequate.

*Commonwealth v. Scassera*, 965 A.2d 247, 250 (Pa. Super. 2009)

(citations omitted).

Additionally, an appellate court shall vacate a sentence and remand the

case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa.C.S.A. § 9781(c)(1-3).

Here, the trial court stated:

The sentencing guidelines had a standard range of seventy-two (72) hours to two (2) months [of imprisonment]. On the night of this incident, the manner in which Appellant drove under the

- 18 -

influence posed a danger to innocent drivers, passengers, and pedestrians on the roads of Montgomery County. The [trial] court found, assessing Appellant's testimony and his credibility during the course of the trial, that he displayed a lack of understanding of how his driving endangered the lives of others. The [trial] court interpreted his demeanor as almost defiant, as if he thought he was being inconvenienced by the fact that he endangered the lives of others. Appellant was woefully unaware of the fact that the medication he took on that date was such that he was incapable of operating a vehicle safely. Based on those reasons, the [trial] court sentenced Appellant in the standard range of the guidelines to a term of imprisonment of not less than fifteen (15) days and not more than six (6) months[.] The trial court considered all the requisite sentencing factors, including the nature of the circumstances of the offense, the history and characteristics of the defendant, the recommended guideline range, the gravity of the offense, and the rehabilitative needs of Appellant when imposing its sentence. Based on the reasons articulated on the record, the sentence was not unreasonable or excessive and the [trial] court exercised proper discretion in sentencing Appellant in the standard range to a term of imprisonment for no less than fifteen (15) days nor more than six (6) months.

Trial Court Opinion, 12/11/2019, at 21-22.

Upon review, we discern no abuse of discretion in sentencing Appellant. Initially, we note that Appellant claims on appeal that the trial court sentenced him outside of the standard range of the sentencing guidelines. Upon review, however, we conclude that Appellant was sentenced within the applicable standard range of the sentencing guidelines. At sentencing the Commonwealth stated that under the sentencing guidelines, the "standard range [sentence was] 72 hours to two months" of imprisonment and the "aggravated range [was] three months." N.T., 9/27/2019, at 8. Appellant agreed. *Id.* When imposing its sentence, the trial court stated that the standard range of the sentencing guidelines, in this case, was "72 hours to 2

months" of imprisonment. *Id.* at 13. Accordingly, the trial court demonstrated its awareness of the applicable guidelines before imposing sentence. Furthermore, the trial court's minimum sentence of 15 days fell within the standard range of the sentencing guidelines. Thus, pursuant to 42 Pa.C.S.A. § 9781, Appellant was required to show that the sentencing court sentenced him within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable. Appellant has not done so. Moreover, upon review, the trial court examined the factors set forth under 42 Pa.C.S.A. § 9721(b), including, the protection of the public, the gravity of the offense, and Appellant's rehabilitative needs. Before imposing Appellant's sentence, the trial court cited the specific provisions of Section 9721 and noted it was required to state its reasons for the sentence on the record. *Id.* at 12. The trial court ultimately imposed its sentence because Appellant posed a danger to the community, did not accept responsibility, and, therefore, required more rehabilitation than the minimum sentence recommended by the guidelines. *Id.* at 12-13. The record supports the trial court's decision. Finally, while Appellant complains that the trial court did not have adequate personal information about him available at the time of sentencing, he did not request, and, in fact, waived the preparation of a pre-sentence investigation report. *Id.* at 9. Appellant also fails to point to additional evidence that the trial court should have considered, but did not. In fact, when given the chance to present additional evidence for the trial court to consider before sentencing, Appellant declined

to do so. *Id.* at 10. For all of the foregoing reasons, we conclude there was no trial court abuse of discretion in sentencing. Appellant's final claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/20