J-A15044-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL PRINCE, | : | |
| | : | |
| Appellant | : | No. 2899 EDA 2018 |

Appeal from the Judgment of Sentence Entered January 18, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001300-2014

BEFORE:   LAZARUS, J., KING, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:            **FILED:  FEBRUARY 2/12/21**

Daniel Prince (Appellant) appeals *nunc pro tunc* from the judgment of sentence imposed following his convictions for aggravated assault, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, possession of an instrument of crime (PIC), and recklessly endangering another person (REAP).  We affirm.

We glean the following facts from the record.  On December 4, 2013, at approximately 6:45 p.m., brothers Dominick and Derrick Dixon were walking on Amber Street in Philadelphia.  Upon their arrival at the intersection of Amber and Auburn Streets, Appellant verbally confronted Derrick.  Dominick physically intervened to create more distance between Appellant and Derrick by simultaneously placing his hands on each individual's chest.  Appellant drew a small, black handgun and fired one shot

[*] Retired Senior Judge assigned to the Superior Court.

into Dominick's right leg, then fled down Auburn Street and ran into a house near the end of the block. Meanwhile, Dominick walked to and knocked on the home of a resident of Amber Street to get something to wrap his injured leg, while exclaiming his disbelief that Appellant shot him. Dominick's other brother, Noble Spalding, happened to walk by the scene and called 911. Spalding did not wait for the police or emergency medical services to arrive because he had an outstanding warrant. Dominick sat on the stoop and he and Derrick waited for the police and emergency medical services.

At approximately 7:00 p.m., Officer Michael Szelagowski and his partner arrived at the scene, finding an injured Dominick with a cloth wrapped around his bleeding leg. Initially, Dominick was uncooperative because he had a bundle of heroin in his pocket and a warrant out for his arrest for absconding from probation. Eventually, Dominick disclosed that he was shot by an individual named Daniel, whom he knew as "Dip." Medics arrived to transport Dominick to the hospital, and prior to his entering the ambulance, Officer Szelagowski asked Dominick if he had any weapons or drugs on his person. Dominick handed Officer Szelagowski the bundle of heroin.

At the crime scene, bystander Preston Garrett approached Officer Szelagowski and told him that he had seen the immediate aftermath of the shooting. Because Officer Szelagowski was busy securing the crime scene, Officer Edward Slater attempted to interview Garrett. Garrett was reluctant

- 2 -

to discuss the shooting in public, but stated that he saw "Danny Prince," whom he also knew as "Dip," fleeing the scene of the shooting. Officer Slater knew "Dip" to be Appellant from patrolling the neighborhood. Officer Slater provided Garrett his phone number, and Garrett called him about an hour later to schedule an interview for the following day.

After Dominick was released from the hospital that night, he was transported to the East Detectives' office and arrested for absconding from probation and possessing heroin. Detectives Martin Sheeron and Dennis Dusak interviewed Dominick. During that interview, Dominick stated that "Daniel," otherwise known as "Dip," whom he had known for two years, shot him with a .25-caliber handgun that Dip had showed him during an earlier conversation that day. Dominick did not know Dip's last name. According to Dominick, Dip was wearing a black jacket and an Auburn University hat at the time of the shooting, and he fled into his uncle's house on Auburn Street. Detective Sheeron, who had already learned from other officers who spoke with Garrett that the suspected shooter's last name was "Prince," retrieved a single photograph of Appellant and showed it to Dominick. Dominick identified Appellant as the shooter and signed the photograph.

Derrick also gave a statement at the East Detectives' office that night. Although he did not know the shooter's name, he described him as wearing a black, puffy vest.

The following day, Garrett gave a statement at the East Detectives' office. He said that he was halfway down the 2100 block of Auburn Street when he heard a single, small-caliber gunshot from the intersection of Amber and Auburn Streets. Appellant, whom he had known for several years, ran past Garrett down Auburn Street toward the Trenton Avenue intersection and into a house on the corner. Garrett described Appellant as having a tattoo under his right eye, and identified him from a photo array.

Detective Sheeron conducted a database search and discovered that the address listed on Appellant's Pennsylvania identification card matched the house into which Dominick and Garrett witnessed him flee. Detective Sheeron executed a search warrant at that house on December 7, 2013, and recovered an Auburn University hat and a black, puffy vest from the basement.

On January 6, 2014, Appellant was arrested while walking down the street. He had tattoos of a teardrop under his right eye and "DIP" on his right forearm. Appellant was charged with the aforementioned crimes, as well as simple assault. Appellant proceeded to a jury trial, which resulted in a mistrial because the jury was deadlocked as to all of the charges.[1]

On July 6, 2016 to July 11, 2016, Appellant proceeded to a second jury trial. At this trial, Dominick, Derrick, and Garrett recanted their statements to police. Dominick, who was incarcerated at the time of trial, testified that

---

[1] The simple assault charge was *nolle prossed* at the end of this trial.

he was concerned that his fellow inmates knew he was testifying in a case other than his own "[b]ecause people don't like people telling on people." N.T., 7/6/2016, at 36. Nevertheless, he acknowledged that he was shot in the right leg at Amber and Auburn Streets on December 4, 2013. However, contrary to the statement he provided to police, Dominick testified that he did not know who shot him nor did he know anyone by the nickname "Dip." Later in his testimony, Dominick stated that "Dip" is a friend of his named Dustin. Dominick also acknowledged that he has brothers, two of whom are Derrick and Spalding, and that Spalding called 911 following the shooting. Despite that testimony, when the audio recording of the 911 call was played at trial, Dominick denied that it was Spalding's voice on the call.

In response to the recantation, the Commonwealth confronted Dominick with the statement he provided to police shortly after the shooting. Dominick acknowledged giving and signing the statement. To explain discrepancies between his prior statement and testimony, Dominick asserted that he was high at the time of the interview, despite telling detectives otherwise at the time of the interview. He also claimed that the only reason he identified Appellant as the shooter was because detectives told him they would drop the absconding from probation and possessing heroin charges and release him from custody if he did so. The Commonwealth presented to Dominick the photograph of Appellant that he signed. While Dominick acknowledged that he identified the photograph of Appellant as the

individual who shot him, he again claimed the detectives promised he would be released in exchange for his identification of Appellant.

Garrett, at the outset of his testimony, stated that he did not want to testify, remembered little due to his medications of OxyContin and Xanax, and claimed that he "didn't see nothing." *Id.* at 107. Garrett testified that he saw a crowd of people running away after he heard a gunshot, and that he was not sure if Appellant was in the crowd. The prosecutor handed Garrett his police statement, which Garrett refused to look at. In response, the trial court excused the jury and told Garrett to conduct himself properly and answer questions truthfully. Garrett agreed and the trial continued. The Commonwealth confronted Garrett with the relevant portions of his police statement, including Garrett's identification of Appellant as the individual who ran past him after he heard the gunshot. The Commonwealth also highlighted that the statement differed from Garrett's testimony as it did not mention a crowd of people running away. Garrett explained the discrepancy was the fault of the interviewing detectives, alleging they did not write down his entire statement.

Derrick testified that he arrived on the scene after the shooting occurred and did not: (1) see the shooting; (2) know Appellant; (3) recognize the statement he had given to the detectives; nor (4) say anything that was in that statement. Nonetheless, he claimed that the police physically "beat [the] statement out of [him,]" and tried to "force

[him] to say something that [he didn't] see." N.T., 7/8/2016, at 27-28. The Commonwealth confronted Derrick with his prior signed statement.

The signed statements of Dominick, Derrick, and Garrett were admitted at trial through the testimony of their respective interviewing detectives and officers as prior inconsistent statements. Additionally, detectives and officers testified to the investigation, the evidence obtained at the crime scene and the house of Appellant's uncle, and the circumstances surrounding the interviews of Dominick, Derrick, and Garrett. Detective Sheeron testified that based on his experience, he did not believe Dominick was under the influence at the time of his interview. He also refuted Dominick's claim that detectives brokered a deal with him in exchange for his cooperation. Regarding the circumstances of Garrett's statement, Officer Szelagowski testified that he arranged a meeting with Garrett for the day following the shooting, and that Garrett requested that he be picked up at a location other than Garrett's home because he did not want his neighbors to see that he was providing a statement to police. Detective Paul Alminde testified that Derrick was forthcoming and he did not use any physical force while interviewing him. He noted that Derrick provided a handwritten correction in his statement.

At the conclusion of trial, Appellant was convicted of the aforementioned crimes. On January 18, 2017, Appellant was sentenced to consecutive terms of incarceration of 8½ to 20 years for aggravated assault,

3½ to 7 years for carrying a firearm without a license, 2½ to 5 years for carrying a firearm on public streets in Philadelphia, 2 to 5 years for PIC, and 6 months to 2 years for REAP, aggregating to a total term of 17 to 39 years' incarceration.

Appellant filed a post-sentence motion, which was denied by operation of law on May 23, 2017. This notice of appeal followed.[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant challenges the weight and sufficiency of the evidence, the admissibility of evidence, and the discretionary aspects of his sentence. Appellant's Brief at 9-10.

We begin with Appellant's challenge to the weight of the evidence. Appellant's Brief at 19. The trial court must use the following standard in assessing a weight claim.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be

---

[2] We note that Appellant timely filed a notice of appeal, which was docketed in this Court at 1814 EDA 2017. Trial counsel failed to file a docketing statement with this Court, and on August 8, 2018, we dismissed the appeal pursuant to Pa.R.A.P. 3517. On October 4, 2017, Appellant *pro se* filed a petition to reinstate his direct appeal rights *nunc pro tunc*, which was treated as a first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. New counsel was appointed, who filed an amended PCRA petition. The petition was granted, and this appeal timely followed.

awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017) (citation omitted).

We evaluate the trial court's ruling with the following in mind.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Beatty*, 227 A.3d 1277, 1285-86 (Pa. Super. 2020) (citations omitted).

Here, Appellant contends that the verdict as to all charges was against the weight of the evidence due to a lack of and conflicting identification evidence. Appellant stresses that Dominick's statement to the police was the only evidence to support that he was the shooter. Appellant's Brief at 21. Appellant points out that Dominick recanted at trial, and according to Appellant, Derrick and Garrett "never identified Appellant as the shooter and testified at trial that they never made any statements." *Id.* Appellant also notes that "no gun was recovered or any ballistic testing of any recovered clothing was conducted." *Id.*

- 9 -

The trial court explained in its Pa.R.A.P. 1925(a) opinion why the jury's guilty verdict did not shock its sense of justice.[3] The trial court found the accounts of Dominick, Derrick, and Garrett, provided to police prior to trial, independently identified Appellant as the shooter in some manner. Trial Court Opinion, 7/22/2019, at 25. While their trial court testimony differed from their police statements, the Commonwealth discredited each of them by impeaching them with their original police statements following the shooting. The jury was entitled to disregard their recantations and believe their pre-trial identifications of Appellant as the person who shot Dominick. In addition, the trial court found wholly frivolous Appellant's claim that the verdict was against the weight of the evidence based on a failure to recover the firearm.

Appellant's argument is premised upon discounting entirely the statements of the detectives and police officers, and most significantly, the statements of Dominick, Derrick, and Garrett obtained by police. The jury's verdict demonstrates it credited each individual's initial identifications of Appellant to police over their recantations. "It is well settled that the jury is free to believe all, part, or none of the evidence to determine the credibility

---

[3] As noted *supra*, Appellant's post-sentence motion was denied by operation of law pursuant to Pa.R.C.P. 720(B)(3)(a). "[W]hen a claim is denied by operation of law, the effect of the denial operates in the same manner as if the court had denied the motion itself." **Commonwealth v. Upshur**, 764 A.2d 69, 73 (Pa. Super. 2000) (*en banc*). Therefore, we may review Appellant's weight claim as if the trial court ruled on it directly. **Id.** Furthermore, we have the benefit of the trial court's analysis of Appellant's weight claim in its Pa.R.A.P. 1925(a) opinion.

of witnesses." **Commonwealth v. Houser**, 18 A.3d 1128, 1136 (Pa. 2011); **see also Commonwealth v. Hanible**, 836 A.2d 36, 39 (Pa. 2003) (holding the jury was free to evaluate both the witness's statement to police as well as his testimony at trial recanting that statement, and was free to believe all, part, or none of the evidence).

Regarding the absence of the firearm, the evidence included Dominick's police statement that Appellant shot him with a .25-caliber handgun that Appellant had shown him during an earlier conversation. Such evidence, coupled with Derrick and Garrett's statements identifying Appellant as the shooter and Dominick's gunshot injury, provided a strong connection between Appellant and the firearm. Thus, the evidence belies his position that the absence of the firearm discredits the verdict. **See Commonwealth v. Smith**, 146 A.3d 257 (Pa. Super. 2016) (holding that circumstantial evidence that Smith possessed a firearm supported a finding that the verdict was not against the weight of the evidence for firearm possession charges). Thus, we discern no abuse of discretion in the trial court's determination that the verdict was not against the weight of the evidence.

In his second issue, Appellant raises a sufficiency challenge. He does not challenge any of the specific elements of the crimes charged. Instead, he argues there is insufficient evidence to identify him as the perpetrator of

the charged offenses for the same reasons he relied upon to support his weight-of-the-evidence challenge.

We review challenges to the sufficiency of the evidence as follows.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Graham***, 81 A.3d 137, 142 (Pa. Super. 2013) (citation omitted).  An out-of-court statement to police by a witness may be sufficient to sustain a conviction even if the witness recants the statements at trial. ***See Commonwealth v. Brown***, 52 A.3d 1139, 1171 (Pa. 2012).

Instantly, as stated *supra*, the statements Dominick, Derrick, and Garrett provided to police all independently identified Appellant as the shooter.  The statement of any one of the witnesses is sufficient to establish that Appellant shot Dominick.  ***See id.***  The jury had the opportunity to observe these witnesses as they recanted their out-of-court statements at

trial, and to assess the credibility of their explanations for the recantations. While Appellant believes their police statements were unreliable and incredible, as we noted, the jury was charged with weighing the evidence and passing upon the credibility of the witnesses; we may not substitute our judgment for that of the jury. Therefore, this issue warrants no relief.

Appellant next challenges the admissibility of evidence in several instances. Appellant's Brief at 22-26. In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. *Commonwealth v. Selenski*, 18 A.3d 1229, 1232 (Pa. Super. 2011). Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." *Id.* (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005) (internal citations and quotation marks omitted).

Appellant first attacks the trial court's decision to allow the jury to have access during deliberations to the aforementioned police statements. Appellant's Brief at 22. By way of background, the jury asked during deliberations, "Can we see statements from all witnesses?" N.T., 7/11/2016, at 34. Appellant objected on the basis that the jurors'

deliberation of the verdict must be based on "their recollection of the testimony, the facts, and the evidence." *Id.* at 35. The trial court overruled the objection and allowed the statements to go to the jury.

The decision as to whether an exhibit should be allowed to go out with the jury during deliberations is within the sound discretion of the trial judge, and such choice will not be overturned absent an abuse of discretion. *Commonwealth v. Dupre*, 866 A.2d 1089, 1102 (Pa. Super. 2005); Pa.R.Crim.P. 646(A). Specifically, Rule 646 provides as follows.

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> (B) The trial judge may permit the members of the jury to have for use during deliberations written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed.
>
> ***
>
> (C) During deliberations, the jury shall not be permitted to have:
>
> > (1) a transcript of any trial testimony;
> >
> > (2) a copy of any written or otherwise recorded confession by the defendant;
> >
> > (3) a copy of the information;
> >
> > (4) except as provided in paragraph (B), written jury instructions.
>
> (D) The jurors shall be permitted to have their notes for use during deliberations.

Pa.R.Crim.P. 646.

At trial, the statements were admitted into evidence by motion of the Commonwealth. N.T., 7/8/2016, at 125. This Court has held that such exhibits are permissible for a jury to have under subsection (A) of Rule 646. *See Commonwealth v. Parker*, 104 A.3d 17, 26 (Pa. Super. 2014) (concluding trial court acted within its discretion in permitting witness's prior inconsistent statement to be sent back with jury during deliberations, in murder prosecution in which witness testified that he was present when victim was shot but that witness did not see the shooter in courtroom at trial, while witness's prior statement asserted that defendant was the shooter). It was within the trial court's discretion to grant the jury's request to review these statements as an aid to assist it in its deliberations. Accordingly, no relief is due.

Next, Appellant argues the testimony of Detectives Sheeron and Dusak concerning the police statements of Dominick and Garrett should not have been admitted under Pa.R.E. 403 because it was cumulative evidence, as their police statements "had been read and thoroughly dissected" during their respective testimony. Appellant's Brief at 23-24.

Under Rule 403, a trial court may, in its discretion, preclude relevant evidence if its probative value is outweighed by the danger of needlessly presenting cumulative evidence. *See* Pa.R.E. 403. Cumulative evidence is "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." *Commonwealth v.*

***G.D.M., Sr.***, 926 A.2d 984, 989 (Pa. Super. 2007) (internal quotations and citation omitted). "Evidence that bolsters, or strengthens, existing evidence is not cumulative evidence, but rather is corroborative evidence." ***Id.***

Here, while the content discussed in each individual's testimony of the police statements overlaps, the testimony concerning the circumstances of the police statements differed. Dominick recanted his police statement, testifying that he was high at the time he gave the statement and did so only in exchange for his release. On the other hand, Detective Sheeron testified that Dominick did not appear high and that the detective never made such a promise. Moreover, the Commonwealth walked through Dominick's police statement with Detective Sheeron to draw parallels between it and the evidence seized during the execution of the search warrant. Regarding Garrett's testimony, he testified that he remembered little due to his medication of OxyContin and Xanax. The primary purpose of Detective Dusak's testimony was to demonstrate Garrett appeared sober and of sound mind when he identified Appellant as the individual fleeing the shooting. In sum, the testimony of Detectives Sheeron and Dusak strengthened the Commonwealth's argument that the jury should believe Dominick and Garrett's initial identifications of Appellant. The trial court aptly summarized because Dominick and Garrett "so vehemently denied making their statements, the Commonwealth was perfectly entitled to bolster the police testimony." Trial Court Opinion, 7/22/2019, at 29. We

agree. Therefore, because this evidence was corroborative and not cumulative, we conclude the trial court did not abuse its discretion in admitting their testimony.

Next, Appellant challenges the admissibility of a portion of Detective Dusak's testimony on the basis that it constituted inadmissible hearsay. Appellant's Brief at 24. By way of background, the Commonwealth asked Detective Dusak if he reviewed Garrett's police statement with him prior to trial and what was Garrett's response. Appellant objected to the responsive statement as hearsay. The trial court overruled the objection, and Detective Dusak stated that Garrett "basically said that we were going to get him killed" and that Appellant "has friends and family in the area and that he was scared." N.T., 7/8/2016, at 17-18. Appellant argues that these statements were made out of court and were offered for their truth, and therefore constituted hearsay.[4]

Hearsay is "an out of court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule." *Commonwealth v. Manivannan*, 186 A.3d 472, 480 (Pa. Super. 2018); Pa.R.E. 801(c). There are several exceptions to the rule against hearsay, including the following state-of-mind exception.

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

---

[4] The trial court does not address the claim because it erroneously found "no hearsay objections had been made during the trial." Trial Court Opinion, 7/22/2019, at 29.

\*\*\*

(3) **Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).

Detective Dusak's account that Garrett stated he was scared is hearsay because it directly asserted Garrett's state of mind. Nonetheless, the statement was offered as evidence of Garrett's emotion, *i.e.*, state of mind, in testifying against Appellant, and therefore admissible under the state-of-mind exception. Thus, the trial court did not abuse its discretion in overruling Appellant's hearsay objection. Accordingly, this claim does not afford relief.

In his last challenge to the admissibility of evidence, Appellant claims that the trial court erred in admitting hearsay evidence in Officer Slater's testimony. Appellant's Brief at 26. By way of background, Officer Slater testified to the phone call he had with Garrett to set up the interview for the day following the shooting, wherein Garrett stated he wanted to be picked up away from his residence because he did not want people in his neighborhood to see that he was cooperating with the police. N.T., 7/8/2016, at 68. The trial court explained it determined Officer Slater's

account of the conversation with Garrett was an admissible reference to evidence obtained in the ordinary course of the conduct of the investigation of the police officers. Trial Court Opinion, 7/22/2019, at 29. In this regard, it appears that the trial court's rationale to allow the account was based on a finding that the testimony was not being offered for the truth of the matter asserted, but to explain Officer Slater's course of conduct in response to Garrett's request.

An out-of-court statement offered, not for its truth, but to explain the witness's course of conduct, is not hearsay. *Commonwealth v. Wade*, 226 A.3d 1023, 1033 (Pa. Super. 2020). However, Officer Slater's testimony, recalling Garrett's statement of where to pick him up and why, is classic hearsay because Garrett's statement was that he did not want people to see that he was cooperating with the police, and it was offered to demonstrate why Garrett was not cooperating at trial. No exceptions to the rule against hearsay applied. Therefore, we conclude that the trial court abused its discretion in admitting this evidence.

Nevertheless, we may affirm if the admission was harmless error. We use the following standard to evaluate whether an evidentiary issue is harmless.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the

prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict.

*Commonwealth v. Yockey*, 158 A.3d 1246, 1254 (Pa. Super. 2017), *citing Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005) (quotation marks omitted).

Here, the jury was already aware Garrett was afraid to testify and did not want to. At the beginning of his testimony, Garrett confirmed that he did not want to be testifying at the trial and that he was "drug down" to the courtroom to testify. N.T., 7/6/2016, at 102-103. It was evident based on this testimony and Garrett's combativeness that he did not want to cooperate. Thus, we conclude the error was harmless as we are convinced beyond a reasonable doubt that the trial court's error could not have contributed to the verdict.

We next turn to Appellant's claim that Officer Slater's testimony should not have been admitted because Garrett was under the influence of alcohol and OxyContin and Xanax during the shooting. First, Appellant's claim is a misrepresentation of the record. In his police statement, when asked if he was under the influence of drugs or alcohol, Garrett responded that he "had some beers a half hour ago." N.T., 7/6/2016, at 115. He did not state that he was under the influence of drugs at the time of the shooting. Indeed, at trial, Garrett stated that it was difficult for him to remember the events of

the incident because he was **currently** taking OxyContin and Xanax. Second, intoxication of a witness at the time of the occurrence of the event of which they are testifying does not go to the admissibility of evidence, but rather is a matter for the jury to consider in assessing the witness's credibility and weight of their testimony. ***Commonwealth v. McGuire***, 448 A.2d 69, 613 (Pa. Super. 1982). Therefore, Appellant's final evidentiary claim is without merit.

Lastly, we review Appellant's challenge to the discretionary aspects of his sentence. ***See*** Appellant's Brief at 17-19.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. DiClaudio***, 210 A.3d 1070, 1075 (Pa. Super. 2019), *quoting **Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal, preserved the issue in a post-sentence motion, and

included a Pa.R.A.P. 2119(f) statement in his brief. *See* Appellant's Brief at 23-24. Thus, we now consider whether Appellant has raised a substantial question for our review.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*DiClaudio*, 210 A.3d at 1075 (citations and quotation marks omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant claims the sentencing court abused its discretion because it failed to consider mitigating circumstances, resulting in a manifestly excessive sentence. Appellant's Brief at 14. Appellant also contends the sentence was not justified by adequate reasons. *Id.*

Appellant has raised a substantial question with each of these claims. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (finding that a substantial question was raised where an appellant raised an excessive sentencing claim along with an assertion that the sentencing court failed to consider mitigating factors); *Commonwealth v. Flowers*, 149 A.3d 867, 871 (Pa. Super. 2016) (noting that an appellant raises "a substantial question for our review by asserting that the trial court failed to state adequate reasons on the record for [an a]ppellant's sentence."). Thus, we consider the merits of these claims, mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*DiClaudio*, 210 A.3d at 1074-75, *quoting* **Commonwealth v. Antidormi**, 84 A.3d 736, 760-61 (Pa. Super. 2014). A trial court's sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

Instantly, Appellant contends the trial court failed to consider mitigating factors presented by Appellant at his sentencing hearing pertaining to his troubled youth. Appellant's Brief at 15. As a youth, he was intermittently under the supervision of Department of Human Services for several years, his friend was shot and killed in front of him, and he suffered from addictions to alcohol and drugs. *Id.* Appellant argues the trial court abused its discretion by failing to consider these factors because it did not specifically mention them. *Id.* Appellant further alleges that the trial court

did not state adequate reasons for its deviation from the standard range of the sentencing guidelines. *Id.*

In fashioning Appellant's judgment of sentence, the trial court stated that it took "into account the difficulties that [Appellant] had in [his] upbringing." N.T., 1/18/2017, at 22. Nonetheless, the trial court elected to impose a sentence in the aggravated range of the sentencing guidelines, primarily due to Appellant's escalating criminality and the need to protect the community. *See id.* at 14. Regarding Appellant's escalating criminality and need to protect the community, the trial court discussed Appellant's history with gun violence and involvement in the drug trade. The trial court specifically detailed one incident where Appellant fired a shot into a household, and noted the case *sub judice* followed soon after. Further, the trial court considered Appellant's previous failures to avail himself of rehabilitation, as well as Appellant's rehabilitative needs. It discussed in detail Appellant's prior record, including adjudications as a juvenile for drug possession, and seven arrests and three convictions as an adult. *Id.* at 14. In considering the gravity of the offense, the trial court found it troubling that Appellant was "close up," and "looked at [Dominick] and then shot him." *Id.* at 21. The trial court noted that this act demonstrates a more significant level of violence than shooting a gun without purpose, and indicates to it "that when things don't go [Appellant's] way, [he] reacts with violence of an extreme nature without even a breath." *Id.* According to the

trial court, the day of sentencing was the only time it "saw anything remotely close to" remorse from Appellant. *Id.* at 23. Although the trial court did not specifically reference the mitigating factors detailed by Appellant, the trial court stated that it had taken into account Appellant's troubled upbringing and had the benefit of a pre-sentence investigation (PSI) report, sentencing guidelines, and Appellant's allocution. "[W]here the sentencing judge had the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016) (citation omitted).

After review, we discern no abuse of discretion. The record establishes that the court considered Appellant's troubled youth in detail, but found this mitigating factor was outweighed by the danger Appellant posed to the community. Thus, the trial court considered mitigating circumstances and justified thoroughly Appellant's sentence. Appellant has failed to convince us that the trial court's exercise of its discretion was unreasonable. Accordingly, we conclude that Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/12/21